UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROY LEE WARD,<br><br>Plaintiff,<br><br>v.<br><br>LLOYD ARNOLD, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-800-CCB-SJF |

## OPINION AND ORDER

Roy Lee Ward, by counsel, filed an amended complaint. ECF 22. Ward is a prisoner who resides at the Indiana State Prison, and the Indiana Supreme Court set his execution before the hour of sunrise of October 10, 2025. Under 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On September 21, 2025, the Court allowed Ward to proceed on Claim 4 relating to the method of execution, which primarily focused on his concerns about the use of compounded pentobarbital.[1] ECF 11. The State defendants then submitted an affidavit from the Warden of the Indiana State Prison attesting that the State intended to use manufactured pentobarbital. ECF 19-1. As a result, the Court found pursuant to Fed. R. Civ. P. 56(f) that summary judgment was likely appropriate on Claim 4 and ordered

---

[1] The Court did not address Claims 1, 2, 3, and 5 in this initial order.

Ward to either show cause as to why summary judgment should not be entered on Claim 4 or to file an amended complaint. ECF 20. Ward opted to file an amended complaint. ECF 22.

Claim 4 – Method of Execution

The amended complaint asserts five constitutional claims under 42 U.S.C. § 1983.[2] The Court first examines the newly amended Claim 4. There, Ward challenges the use of pentobarbital in general because it causes pulmonary edema. He also raises concerns about the State obtaining pentobarbital from unknown, unregulated suppliers, including an increased risk of improper storage, improper transportation, adulteration, and tampering. For alternative methods of execution, Ward proposes fentanyl in addition to pentobarbital, a firing squad, or nitrogen hypoxia.

To challenge a method of execution, a prisoner must "establish that the method presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." *Glossip v. Gross*, 576 U.S. 863, 877 (2015). However, "prisoners cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." *Id.* "Instead, prisoners must identify an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Id.* The Court finds that Ward has stated a plausible claim, and he may proceed on Claim 4 of the amended complaint.

---

[2] The amended complaint says it does not reproduce Claims 1, 2, 3, and 5 from the original complaint as required by N.D. Ind. L.R. 15-1(b), but clarifies that Ward is not abandoning them. ECF 22 ¶11. Given the exceptional time constraints of this case, under L.R. 1-1(b), the Court suspends L.R. 15-1(b) and accepts the incorporation of Claims 1, 2, 3, and 5 into the amended complaint by reference.

*See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 131-33 (D.C. Cir. 2020) (finding that a substantially similar claim stated a plausible Eighth Amendment method of execution claim). A scheduling order relating to this claim will soon follow.

Next, the Court addresses the four remaining claims, which are as follows:

**Claim 1:** The State is violating Ward's constitutional right "to have what transpires during his execution" fully accessible to his witness by blocking sound from the execution chamber;

**Claim 2:** The State is violating Ward's First Amendment right to petition the government for redress of grievances by failing to provide Ward with information about his method of execution;

**Claim 3:** The State is violating Ward's right to substantive due process by failing to provide Ward with information about his method of execution; and

**Claim 5:** The State is violating Ward's right to procedural due process by arbitrarily depriving him of the ability to confirm that the State has not infringed on his right to select execution witnesses by installing a one-way mirror in the execution room. The State is also violating Ward's right against cruel and unusual punishment by depriving him of the ability to view his witnesses during his execution.

<u>Claim 1 – Soundproofing in the Execution Chamber</u>

In Claim 1, Ward asserts that the State is violating his constitutional right "to have what transpires during his execution fully accessible to those who witness his execution and by blocking sound from the execution chamber." ECF 1 at 62. He alleges that witnesses of the execution of Benjamin Ritchie, which took place in May 2025, reported that they could hear no sound from the execution chamber even when Ritchie appeared to be talking or singing. He alleges that, without sound, witnesses to his

3

execution will be unable to hear cries of pain and thus be less able to determine whether the State has executed him fairly and humanely.

In support of this claim, Ward invokes the First Amendment right of access to governmental proceedings. However, the State is not depriving Ward himself of the ability to hear sounds from the execution chamber, and Ward lacks standing to raise this claim on behalf of the press or members of the public. *See Wilson v. Lane*, 870 F.2d 1250, 1255 (7th Cir. 1989) ("[A] litigant generally must assert his or her own legal rights and cannot rest a claim for relief on the legal rights or interests of third parties."). While there are exceptions to the standing requirement, these exceptions do not apply where the third party is able to assert its own rights. *Id.* Significantly, numerous media companies are now pursuing injunctive relief against the State of Indiana in connection with their right to witness executions. *Associated Press v. Neal*, 1:25-cv-872 (S.D. Ind. filed May 5, 2025). In other words, the third parties here are not only capable of asserting their own rights, they are actively doing so.

In State litigation, Ward responded to the State's standing argument by framing the claim as a violation of "his own First Amendment right to be heard from the chamber," asserting that he has a right to "physically be heard if [people] want to listen." Corrected Reply Brief in Support of Successive PCR Petition at 24, *Ward v. State*, Case No. 25S-SD-167 (Ind. filed June 30, 2025). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights,

4

the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

For this inquiry, the relevant factors include: "(1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether the inmates have access to alternative means of exercising the restricted right; (3) the impact an accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether the regulation is an exaggerated response to prison concerns." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). "While the burden of persuasion is on the prisoner to disprove the validity of a regulation, defendants must still articulate their legitimate governmental interest in the regulation." *Id.* "Courts are to accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.*

The Court first considers whether there is a valid, rational connection between the soundproof execution chamber and the State's reasons for declining to remove the soundproofing. In State Court briefing, the State defended against this claim by representing that "the [current execution] procedure prevents the execution from becoming an unnecessary spectacle by limiting witness access to the execution process to only those the legislature has deemed necessary to ensure the safety and efficacy of that process and those involved in it." Response in Opposition to Successive Post-

5

Conviction Petition at 51-52, *Ward v. State*, Case No. 25S-SD-167 (Ind. filed June 30, 2025). Notably, the lethal injection procedure requires that the State of Indiana maintain the confidentiality of the identities of those assisting with the execution, while also allowing up to thirteen witnesses consisting of the inmate's invitees, which may include press members, and the victim's family. ECF 1-1 at 2-3. The lethal injection procedure also sets forth specific details on inserting venous catheters into the inmate's arms, injecting the lethal chemicals, and verifying the death of the inmate. *Id.* at 8-12.

The soundproof execution chamber thus serves to allow those assisting the Warden with the execution to communicate as necessary to properly execute the inmate without fear of witnesses identifying them by their voices or by others using their names. Certainly, the safety of correctional staff qualifies as a legitimate governmental interest. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). The State also has a legitimate governmental interest in ensuring that the inmate's execution is administered with the care necessary to ensure that it complies with the Eighth Amendment guarantee against cruel and unusual punishment. Consequently, there is a valid, rational connection between the soundproof nature of the execution chamber and the State's legitimate interests.

The Court next considers whether Ward has alternative means to alert witnesses to any potential pain. While the soundproofing may prevent Ward from being heard in the final moments of his life, it does not entirely prevent him from conveying pain. As

detailed by Ward in the complaint, five witnesses observed Benjamin Ritchie, an inmate executed in May 2025, "violently lurching forward" after receiving the pentobarbital injection. ECF 1 at 51-31. It also seems likely that the witnesses could have seen more subtle expressions of pain given that in Ritchie's final moments, witnesses were able to count his last breaths and to see the emotional reaction of his spiritual advisor. *See id.*

The Court also considers the impact of removing the soundproofing and whether the soundproofing is an exaggerated response to prison concerns. On this limited record, it is difficult to assess the likelihood of correctional staff being identified by voice or by use of their name without soundproofing or the negative consequences that such an identification might incur. The Court similarly has little information to assess the practical difficulty in removing soundproofing from the execution. However, the potential effect of removing the soundproofing on correctional staff performing the execution procedures is somewhat less abstract. Concerns about identification might encourage correctional staff to lower their voices, rendering communication less effective and misunderstandings more likely, or such concerns might simply distract them, thereby increasing the likelihood of mistakes in the execution process. Catcalls, crying, or other forms of emotional expression from the witnesses might similarly distract correctional staff as they perform the medically adjacent procedures that are critical to execution.

In sum, each of the relevant factors weighs in favor of the State defendants. As a result, the Court finds that the soundproofing of the execution chamber is reasonably related to the State's legitimate penological interests in maintaining the safety of

correctional staff and in ensuring that the execution process complies with the Eighth Amendment. Therefore, the Court will dismiss Claim 1 for failure to state a valid claim.

Claims 2 & 3 – Denial of Execution-Related Information

In Claim 2, Ward asserts that the State of Indiana is violating his First Amendment right to access the courts by refusing to respond to his public records requests for information relating to the lethal injection protocol and his method of execution. Ward further asserts that the State has thereby "erected a condition that frustrates Ward's ability to litigate his claims related to the constitutionality of his execution." ECF 1 at 63. "To determine whether a plaintiff has meaningful and effective access to Court, we require the plaintiff to identify: (1) a nonfrivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a suit or settlement." *Harer v. Casey*, 962 F.3d 299, 308 (7th Cir. 2020).

The Court understands Ward's frustrations with the lack of information regarding his execution but notes that Ward is actively litigating a method-of-execution claim in this lawsuit. Specifically, as set forth above, the Court is allowing Ward to proceed on a claim of injunctive relief against the defendants to ensure that the method in which he is executed does not violate the Eighth Amendment. "[A]n access-to-court claim ordinarily may not proceed at the same time and in the same case as a timely-filed underlying claim; a remedy cannot be ineffective if it is yet to be realized." *Harer*, 962 F.3d at 309. "The filing of a case undermines the argument that an individual lacks access to court." *Id.* "[T]here is . . . no point in spending time and money to establish the

8

facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.* at 310. "Discovery provides . . . access to information, and as a result, access to court." *Id.* Because judicial remedies remain available to Ward, namely his method-of-execution claim, he may not proceed on a related interference with access to the courts claim.

In Claim 3, Ward asserts his right to substantive due process as the constitutional basis for a claim against the State of Indiana for refusing his requests for information.

> The Due Process Clause has a substantive and procedural component. But the scope of substantive due process is very limited. Substantive due process protects against only the most egregious and outrageous government action. When stating a claim, a plaintiff must allege that the government violated a fundamental right or liberty. Such a violation must have been arbitrary and irrational. Courts should also be reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.

*Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 599 (7th Cir. 2022). "Because [the Supreme Court has] always been reluctant to expand the concept of substantive due process, [it] held in *Graham v. Connor*, 490 U.S. 386 (1989), that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Notably, in Claim 3, Ward rests on the same facts and asserted injury that he presented for Claim 2, his interference with access to the courts claim. Against this legal backdrop, the Court finds that Claim 3 is more appropriately construed as an interference of access to the courts claim. The analytical framework for

9

interference with access to the courts presumes a substantive right to court access. *See Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004) ("The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process."). Consequently, the same reasoning that supports the denial of Claim 2 also supports denying Claim 3. Therefore, Ward may not proceed on Claim 3 because it does not state a valid claim.

Claim 5 – Ability to See Witnesses from the Execution Chamber

In Claim 5, Ward asserts that the State is violating Ward's right to procedural due process by arbitrarily depriving him of the ability to confirm that the State has not infringed on his statutory right to invite execution witnesses by installing a one-way mirror in the execution room. "To determine whether [a procedural due process] violation occurred, we first ask whether [the plaintiff] has been deprived of a protected liberty or property interest; and second, we ask whether that deprivation occurred without due process." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 365 (7th Cir. 2019).

"Stated simply, a State creates a protected liberty interest by placing substantive limitations on official discretion." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462, (1989). "[T]he most common manner in which a State creates a liberty interest is by establishing substantive predicates to govern official decision-making and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Id.* The Court has examined the Indiana statute and the lethal injection

protocol. Ind. Code § 35-38-6-6; ECF 1-1. They each contain identical language allowing the Warden to "exclude a person from viewing the execution if the warden determines that the presence of the person would threaten the safety or security of the state prison and sets forth this determination in writing." *Id.* The relevant authority provides some substantive predicate to govern the Warden's decision on whether to exclude witnesses; namely whether that witness's presence would threaten the safety or security of the facility. Consequently, the Court declines to find a lack of a statutorily protected interest at the screening stage.

The Court next considers the adequacy of a remedy for a violation of Ward's purported statutory right to invite witnesses. "In evaluating what process satisfies the Due Process Clause, . . . the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Leavell v. Illinois Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010). "If the plaintiff alleges that the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Id.* "By contrast, when the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy." *Id.* "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012).

Notably, Ward has not alleged that the State of Indiana has attempted to deprive him of the right to invite witnesses, nor has presented any facts suggesting that the State of Indiana is likely to do so. It thus appears that Ward's concerns are with arbitrary deprivations and post-deprivation remedies. However, execution is a special circumstance in which it is impossible for the State of Indiana (or this Court through an injunction) to provide Ward any post-deprivation remedy to vindicate his constitutional rights. Death is the inevitable and immediate result of an execution. Even granting Ward's request and ordering the State of Indiana to remove the one-way mirror would allow Ward only the opportunity to identify a potential violation of his statutory right to invite witnesses, but it would not amount to a post-deprivation remedy for an arbitrary deprivation. Given the impossibility of providing post-deprivation remedies in the context of executions, the Court declines to allow Ward to pursue Claim 5 as a procedural due process violation.

Ward also asserts that depriving him of the ability to view his witnesses violates his Eighth Amendment guarantee against cruel and unusual punishment. The Eighth Amendment prohibits "punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society, or which involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Significantly, the Supreme Court of the United States has held in the context of executions that "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause." *Kentucky Dep't of Corr. v.*

12

*Thompson*, 490 U.S. 454, 461 (1989). No amount of procedural due process can authorize the State to violate the Eighth Amendment by inflicting cruel and unusual punishment, so it necessarily follows that depriving Ward of the ability to view his witnesses during the execution also does not violate the Eighth Amendment. *See Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006) (explaining the relationship between liberty interests and Eighth Amendment violations). Therefore, Ward may not proceed on Claim 5 under the Eighth Amendment.

As a final matter, the Court clarifies that it does not necessarily condone the purported State practices described by Ward in Claims 1, 2, 3, and 5. Through these claims, Ward raises legitimate concerns regarding his execution. For example, it is not difficult for the Court to imagine why Ward would prefer to have the ability to see his invited witnesses in the final moments of his life. But, based on the legal precedent to which this Court is bound, these concerns do not rise to the level of constitutional violations.

For these reasons, the Court:

(1) **GRANTS** Roy Lee Ward leave to proceed on an Eighth Amendment claim against the Commissioner of the Indiana Department of Correction and the Warden of the Indiana State Prison in their official capacities for permanent injunctive relief to ensure that the method in which he is executed does not violate the Eighth Amendment on the theories detailed in this Order;

(2) **DISMISSES** all other claims;

(3) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), the defendants to file an answer by September 26, 2025, only to the claim for which the plaintiff has been granted leave to proceed in this screening order;

(4) **GRANTS** the motion for leave to file an exhibit (ECF 23); and

(5) **ORDERS** Roy Lee Ward to file the exhibit by September 26, 2025.

SO ORDERED on September 25, 2025.

                                            /s/*Cristal C. Brisco*  
                                            CRISTAL C. BRISCO, JUDGE  
                                            UNITED STATES DISTRICT COURT