IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROY LEE WARD, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:25-cv-800-CCB-SJF |
| | ) |
| v. | ) |
| | ) |
| LLOYD ARNOLD, COMMISSIONER INDIANA DEPARTMENT OF CORRECTION AND RON NEAL, WARDEN INDIANA STATE PRISON | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' ANSWERS TO PLAINTIFF'S INTERROGATORIES

In accordance with Federal Rule of Civil Procedure 34, the defendants respond to Plaintiff's Interrogatories. The defendants undertook tremendous efforts to gather as much information as possible within the extraordinarily short time available. Accordingly, the defendants reserve the right to supplement their answers if new information is gathered, discovered, or located at a later date. Discovery is ongoing and Defendants have not completed their investigation of the facts related to this matter.

## INTERROGATORIES

1. Explain the transportation process that was used to transport the vials of pentobarbital from the supplier to the Department of Correction that were used in Benjamin Ritchie's execution. What carrier/service was used to

1

transport each vial of the pentobarbital from the supplier to IDOC? The date each vial was shipped from the supplier to IDOC? The address where the vials were sent? The date each vial arrived in at that address or in IDOC's possession?

ANSWER: Objection. Defendants object to Plaintiff's Interrogatory No. 1 because it would disclose information reasonably calculated to lead to the identity of the Department of Correction's supplier. Under Indiana Code § 35-38-6-1(f), this information is confidential, and its confidentiality explicitly applies to discovery. This Interrogatory appears calculated to accumulate enough specific product characteristics (characteristics unrelated to issues raised by Plaintiff's claims) that may not independently identify the drug supplier but when used together would do just that. Defendants further object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶ ¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24).

Subject to and without waiving the aforementioned objections, Defendants

answer the non-objectionable portions as follows: An Indiana Department of Correction employee retrieved the drugs from a pharmacy and transported them to Indiana State Prison.

2. Explain how the vials of pentobarbital that were purchased by IDOC and used in the execution of Benjamin Ritchie were packaged when they arrived at IDOC from the supplier. Describe with specificity how the parcel was packaged and how each individual vial was packaged when it arrived in IDOC's possession. Specifically, was each vial individually packaged and, if so, how? How was the parcel packaged? What was the material of the packaging made from? Besides the vials, list everything else that was contained in the package when it arrived.

ANSWER: Objection. Defendants object to Plaintiff's Interrogatory No. 2 because it would disclose information reasonably calculated to lead to the identity of the Department of Correction's supplier. Under Indiana Code § 35-38-6-1(f), this information is confidential, and its confidentiality explicitly applies to discovery. This Interrogatory appears calculated to accumulate enough specific product characteristics (characteristics unrelated to issues raised by Plaintiffs claims) that may not independently identify the drug supplier but when used together would do just that. Defendants further object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶ ¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm,

3

and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24).

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: The pentobarbital arrived in a sealed cardboard box with a Styrofoam container inside. Inside the Styrofoam container, the drug vials were packaged in a cardboard container labeled with the markings of the drug manufacturer.

3. Describe where the vials of pentobarbital that were used to execute Benjamin Ritchie were kept when they came into IDOC's possession. Describe the location where they are kept and the specific environment where they are kept. Who had possession of the vials and what is that person's qualifications and experience with managing and storing drugs? Please describe the place where each vial is kept, including the temperature of the area where it is kept? Besides the person who has possession of the drugs, who else has access to the drug? How often is the temperature of the environment where the drug is kept is monitored? Once the drug is in IDOC's possession, how is the temperature where the vials are kept maintained and who monitors the temperature and how often? What temperature are the vials stored at and what equipment is used to

4

maintain that temperature? Is a log or record kept of the temperature and conditions where the drug is kept?

ANSWER: Objection. Defendants object to Plaintiff's Interrogatory No. 3 because it would disclose information reasonably calculated to lead to the identity of the Department of Correction's supplier. Under Indiana Code § 35-38-6-1(f), this information is confidential, and its confidentiality explicitly applies to discovery. Defendants further object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24).

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: The pentobarbital is kept in an environment that maintains a temperature suitable for its storage on the campus of Indiana State Prison. The vials are locked in a safe behind three levels of locks. Three Indiana State Prison employees have the ability to unlock the safe.

Temperature checks are conducted daily using a thermometer and recorded.

4. When the vials of pentobarbital that were used to execute Benjamin Ritchie arrived at IDOC, did they contain the original label and was it in its original packaging? Describe the packaging and label that was on each vial when it arrived. Please describe the packaging and label and what information was contained on each.

ANSWER: Objection. Defendants object to Plaintiff's Interrogatory No. 4 because it would disclose information reasonably calculated to lead to the identity of the Department of Correction's supplier. Under Indiana Code § 35-38-6-1(f), this information is confidential, and its confidentiality explicitly applies to discovery. This Interrogatory appears calculated to accumulate enough specific product characteristics (characteristics unrelated to issues raised by Plaintiffs claims) that may not independently identify the drug supplier but when used together would do just that. Defendants further object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims

related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24).

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: When the vials of pentobarbital used for Benjamin Ritchie's execution arrived at IDOC, the pentobarbital was in its original packaging with its original label. Defendants specifically object to providing any further description of the packaging or labelling because that information is information that could be reasonably calculated to lead to the identity of the Department of Correction's supplier, which is confidential by law. Ind. Code § 35-38-6-1(f).

5. Explain the transportation process that was used to transport the vials of pentobarbital from the supplier to the Department of Correction that will be used in Roy Ward's execution. What carrier/service was used to transport each vial of the pentobarbital from the supplier to IDOC? The date each vial was shipped from the supplier to IDOC? The address where the vials were sent? The date each vial arrived in at that address or in IDOC's possession?

ANSWER: Objection. Defendants object to Plaintiff's Interrogatory No. 5 because it would disclose information reasonably calculated to lead to the identity of the Department of Correction's supplier. Under Indiana Code § 35-38-6-1(f), this information is confidential, and its confidentiality explicitly applies to discovery. This Interrogatory appears calculated to accumulate enough specific product characteristics (characteristics unrelated to issues raised by Plaintiffs claims) that

may not independently identify the drug supplier but when used together would do just that. Defendants further object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24).

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: An Indiana Department of Correction employee retrieved the drugs from a pharmacy and delivered it to the Indiana Department of Correction's Central Office. From Central Office, the pentobarbital was transported to Indiana State Prison.

6.  Explain how the vials of pentobarbital that were purchased by IDOC that will be used to execute Roy Ward were packaged when they arrived at IDOC from the supplier. Describe with specificity how the parcel was packaged and how each individual vial was packaged when it arrived in IDOC's possession. Specifically, was each vial individually packaged and, if so, how? How was the

8

parcel packaged? What was the material of the packaging made from? Besides the vials, list everything else that was contained in the package when it arrived.

ANSWER: Objection. Defendants object to Plaintiff's Interrogatory No. 6 because it would disclose information reasonably calculated to lead to the identity of the Department of Correction's supplier. Under Indiana Code § 35-38-6-1(f), this information is confidential, and its confidentiality explicitly applies to discovery. This Interrogatory appears calculated to accumulate enough specific product characteristics (characteristics unrelated to issues raised by Plaintiffs claims) that may not independently identify the drug supplier but when used together would do just that. Defendants further object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24).

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: The pentobarbital arrived in a

sealed cardboard box with a Styrofoam container inside. Inside the Styrofoam container, the drug vials were packaged in a cardboard container labeled with the markings of the drug manufacturer.

7. Describe where the vials of pentobarbital that will be used to execute Roy Ward have been kept since they came into IDOC's possession. Describe the location where they are kept and the specific environment where they are kept. Who has possession of the vials and what is that person's qualifications and experience with managing and storing drugs? Please describe the place where each vial is kept, including the temperature of the area where it is kept? Besides the person who has possession of the drugs, who else has access to the drug? How often is the temperature of the environment where the drug is kept is monitored? Once the drug is in IDOC's possession, how is the temperature where the vials are kept maintained and who monitors the temperature and how often? What temperature are the vials stored at and what equipment is used to maintain that temperature? Is a log or record kept of the temperature and conditions where the drug is kept?

ANSWER: Objection. Defendants object to Plaintiff's Interrogatory No. 7 because it would disclose information reasonably calculated to lead to the identity of the Department of Correction's supplier. Under Indiana Code § 35-38-6-1(f), this information is confidential, and its confidentiality explicitly applies to discovery. Defendants further object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently

disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24).

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: The pentobarbital is kept in an environment that maintains a temperature suitable for its storage on the campus of Indiana State Prison. The vials are locked in a safe behind three levels of locks. Three Indiana State Prison employees have the ability to unlock the safe. Temperature checks are conducted daily using a thermometer and recorded.

8. When the vials of pentobarbital that will be used to execute Roy Ward arrived at IDOC, did they contain the original label and was it in its original packaging? Describe the packaging and label that was on each vial when it arrived. Please describe the packaging and label and what information was contained on each.

ANSWER: Objection. Defendants object to Plaintiff's Interrogatory No. 8 because it would disclose information reasonably calculated to lead to the identity of

11

the Department of Correction's supplier. Under Indiana Code § 35-38-6-1(f), this information is confidential, and its confidentiality explicitly applies to discovery. This Interrogatory appears calculated to accumulate enough specific product characteristics (characteristics unrelated to issues raised by Plaintiffs claims) that may not independently identify the drug supplier but when used together would do just that. Defendants further object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24).

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: When the vials of pentobarbital that will be used for Roy Lee Ward's execution arrived at IDOC, the pentobarbital was in its original packaging with its original label. Defendants specifically object to providing any further description of the packaging or labelling because that information is information that could be reasonably calculated to lead to the

identity of the Department of Correction's supplier, which is confidential by law. Ind. Code § 35-38-6-1(f).

9. Please list the experience and qualifications that person had to perform that task for the person who inserted the IV into Benjamin Ritchie's arm that was used to deliver the pentobarbital to Mr. Ritchie

ANSWER: Objection. Defendants object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24). Pursuant to Ind. Code § 35-38-6-6, the identify of persons assisting in the execution is to remain confidential.

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: The individual(s) responsible for inserting the IV into Mr. Ritchie's arm received extensive and ongoing training from Paramedics and Primary Instructors of IV training. Inserting the IV into the condemned's arm is routinely practiced using live volunteers, and IVs are set in

both arms during those practices. The I.V. Team also used I.V. practice arms to start I.V.'s when a live volunteer isn't available. Practices occur on an average of once a month with the number of practices increasing in frequency as an execution date grows closer.

10. For the person who will insert the IV into Roy Ward's arm that will be used to deliver the pentobarbital to Mr. Ward, please list the experience and qualifications that person has to perform that task. Will it be the same person who performed this task for Benjamin Ritchie's execution?

ANSWER: Objection. Defendants object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24). Pursuant to Ind. Code § 35-38-6-6, the identify of persons assisting in the execution is to remain confidential.

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: The individual(s) that are

responsible for inserting the IV into Mr. Ward received extensive and ongoing training from Paramedics and Primary Instructors of IV training. Inserting the IV into the condemned's arm is routinely practiced using live volunteers, and IVs are set in both arms during those practices. Practices occur on an average of once a month with the number of practices increasing in frequency as an execution date grows closer.

11. With respect to the IV line that is used to administer the drug to the convicted person during the execution, please provide the following information: How many people push the drug through the IV? How long is the IV line? That is what is the length of the IV line from where the drug enters the IV line to where the IV line connects to the convicted person's body.

ANSWER: Objection. Defendants object to this Interrogatory as it is not reasonably related to Count 4 of Plaintiff's Amended Complaint (ECF 24) and is consequently disproportionate to the needs of the case. Plaintiff is challenging the use of pentobarbital to execute Ward. (ECF 22 at ¶¶ 184-196 "Using pentobarbital to execute Ward presents a substantial or objectively intolerable risk of serious harm, and will likely cause Ward to suffer needless pain and torment in violation of the Eighth Amendment"). Specifically, Count 4 asserts that pentobarbital leads to pulmonary edema while the inmate "remains capable of feeling pain, terror and suffocation." (ECF 22 at ¶ 187). Ward was not permitted to proceed on claims related to the Department of Correction's procurement and source of pentobarbital. (See generally ECF 24). Pursuant to Ind. Code § 35-38-6-6, the identify of persons

assisting in the execution is to remain confidential.

Subject to and without waiving the aforementioned objections, Defendants answer the non-objectionable portions as follows: Three individuals are responsible for pushing the drug through the IV. The IV line is approximately 5-6 feet long.

12.  IDOC has admitted to using manufactured, not compounded drugs. What is your definition of manufactured drugs? Does it include drugs that are prepared by a 503(b) or 503(a) entity?

ANSWER: Generally, Defendants understand "manufactured drugs" to mean drugs are produced and distributed without any post-manufacturing customizations. That definition does not include compounded drugs created by a 503(A) or 503(B) entity.

13.  After Benjamin Ritchie was executed, has IDOC made any changes to the execution protocol? If so, what are the changes? Was an investigation or post-execution review conducted? What were the results of that investigation or post-execution review?

ANSWER: No, no changes have been made to the execution protocol since Mr. Ritchie's execution. No, a formal investigation or post-execution review was not conducted. Following each execution, the team debriefs and has a verbal review of the process.

## VERIFICATION

I, Ron Neal, swear and affirm under the penalties for perjury that the above

and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Date: 10/8/25

_____
Ron Neal
Warden of Indiana State Prison
Indiana Department of Correction

Respectfully submitted,

Theodore E. Rokita

                            Indiana Attorney General
                            Attorney No. 18857-49

Date: <u>October 8, 2025</u><s>October 7, 2025</s><s>September 30, 2025</s> By:     <u>*/s/ Jefferson S. Garn*</u>

                            Jefferson S. Garn
                            Deputy Attorney General
                            Attorney No. 29921-49
                            Office of Attorney General Todd Rokita
                            Indiana Govt. Center South, 5th Floor
                            302 West Washington Street
                            Indianapolis, IN 46204-2770
                            Phone: (317) 232-5933
                            Fax: (317) 232-7979
                            Email: Jefferson.Garn@atg.in.gov

                    By:     <u>/s/ Adrienne Pope</u>
                            Adrienne Pope
                            Deputy Attorney General
                            Attorney No. 31911-49
                            Office of Attorney General Todd Rokita
                            Indiana Govt. Center South, 5th Floor
                            302 West Washington Street
                            Indianapolis, IN 46204-2770
                            Phone: (317) 233-0878
                            Fax: (317) 232-7979
                            Email: Adrienne.Pope@atg.in.gov

                    By:     <u>/s/ Tyler Banks</u>
                            Section Chief, Capital and Habeas Litigation
                            Office of Attorney General Todd Rokita
                            Indiana Govt. Center South, 5th Floor
                            302 West Washington Street
                            Indianapolis, IN 46204-2770
                            Phone:(317) 234-7016
                            Fax:(317)232-7979
                            Tyler.Banks@atg.in.gov